UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| KRISTY B. BAER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 4:15-CV-00094-JEM |
| | ) | |
| WABASH CENTER, INC., | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion to Enforce Settlement Agreement [DE 25], filed by Plaintiff Kristy Baer on June 15, 2016, and on Plaintiff's Second Motion to Seal Settlement Agreement [DE 28], filed by Baer on June 20, 2016. Baer asks the Court to enforce the settlement agreement between her and Defendant Wabash Center, Inc., and to seal the draft settlement agreement that Baer signed on June 3, 2016 [DE 29].

**I.**     **Background**

Wabash Center, Inc. is an Indiana corporation that provides services to people with disabilities. Kristy Baer used to work for Wabash, but after Wabash fired her she sued Wabash, seeking to be reinstated in her former position.

The parties negotiated a settlement to the lawsuit: in essence, Baer would agree to drop the lawsuit in exchange for a certain amount of money. On May 11, 2016, Wabash's lawyer wrote to Baer's lawyer that Wabash had "agreed to accept" Baer's settlement demand. Wabash's lawyer added, "I will prepare a draft of the settlement agreement to send you with a stipulation of dismissal."

The parties hit a roadblock the following week as they tried to finalize the written terms of their deal. On May 20, Wabash's lawyer emailed Baer's lawyer a written draft of the settlement and

wrote, "Let me know if this meets with your approval or if [you] have any suggestions for any changes." Three days later, on May 23, Wabash's lawyer emailed Baer's lawyer again, this time attaching a "revised settlement [draft]" with a new provision requiring Baer to "agree[] to abide by the Wabash Center . . . Visitors policy should she wish to visit any of the Wabash Center properties." This provision had not appeared in the May 20 draft.

Baer balked at the new provision. On May 25, her lawyer wrote to Wabash's lawyer that Baer could not agree to the new provision. "If that is an issue," Baer's lawyer wrote, "let me know." On June 1, Wabash's lawyer responded that it was indeed an issue.

On June 3, Baer signed the May 20 draft, and on June 9 her lawyer sent Wabash's lawyer a signed copy and asked Wabash to sign it and honor the May 20 settlement terms.

Wabash declined to sign the May 20 draft.

Baer now asks the Court to enforce the May 20 version of the parties' settlement agreement. *See MH Equity Managing Member, LLC v. Sands*, 938 N.E.2d 750, 757 (Ind. Ct. App. 2010) ("if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain judgment enforcing the agreement"). Baer also asks the Court to seal the May 20 draft settlement agreement, which she has filed as Exhibit D in support of the motion to enforce the settlement agreement. Wabash opposes the motion to enforce the settlement agreement, but Wabash does not object to the motion to seal.

II.     Analysis

    A.     The motion to enforce the settlement agreement

Normal contract law principles govern settlement agreements in Indiana. *MH Equity*, 938 N.E.2d at 757; *see also Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005) ("The

2

intention of the parties to a [settlement] contract is a factual matter to be determined from all the circumstances."); *Lewis v. Sch. Dist. #70*, 648 F.3d 484, 486 n.1 (7th Cir. 2011) ("Whether a settlement agreement is binding is an issue governed by the law of the state in which the parties executed the agreement.").

Here, Baer says, Baer made a final offer, and Wabash accepted it on May 11. That alone, Baer says, constitutes an enforceable agreement, and the provision Wabash sought to include in the May 23 draft is immaterial to the agreement. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 508 (7th Cir. 2007) ("terms addressing purely contingent matters are not necessarily material"); *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, No. 97-5696, 2004 U.S. Dist. LEXIS 7294, *13 (N.D. Ill. Apr. 28, 2004) ("If Steadfast wanted a confidentiality clause, it should have made it known during the negotiations."). And an unresolved *immaterial* term does not justify breaching the material terms of an agreement. *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 997 (7th Cir. 2001) ("lack of agreement on minor, immaterial terms . . . do not preclude a finding that a contract has been formed"); *Beverly v. Abbott Labs.*, 817 F.3d 328 (7th Cir. 2016) (finding indemnification, cooperation, and future employment issues not material and enforcing handwritten settlement agreement between employer and employee). The mere fact that parties disagree on whether to include a certain provision in their written agreement does not make the issue material. *Dillard*, 483 F.3d at 508 ("The materiality of additional written terms introduced after an . . . agreement is reached is not established simply by one party's intransigence or 'refusal to budge' on the new terms.").

The Court agrees with Baer that the provision at issue in the May 23 draft is not material to the settlement agreement. The material terms of the parties' settlement agreement are: (1) that Baer will release her claims against Wabash and agree not to apply for re-employment and not to

disparage Wabash to any third party; and (2) that in exchange Wabash will pay Baer a certain amount of money, characterize the termination of Baer's employment in a certain way, and make only certain limited representations to Baer's future employers. In the May 23 draft, Wabash sought to include a provision by which Baer would agree to abide by Wabash's visitors policy. But whether or not Baer agrees in advance to abide by Wabash's visitors policy is not material to the terms of the settlement deal to which the parties already agreed.

The Seventh Circuit's decision in *Dillard* is instructive. There, the court affirmed a magistrate judge's order granting the defendant's motion to enforce an oral settlement agreement. The parties had orally agreed to a settlement in which the defendant would pay the plaintiff a certain amount of money and reinstate the plaintiff's employment. Later, the plaintiff objected to certain provisions that the defendant had included in its proposed written agreement. For example, the plaintiff objected to having his re-employment characterized as "at will." The plaintiff acknowledged that the parties had orally agreed to *certain* material terms, but he argued that the oral agreement was not final because the parties had continued to negotiate *other* material terms, as evidenced by their continued exchange of drafts. The judge was not persuaded, noting that the plaintiff's effort to restrict the defendant's ability to fire him in the future "was not even mentioned during the parties' oral negotiations," and the Seventh Circuit affirmed. 483 F.3d at 507-08.

Here, the issue of Baer agreeing to abide by Wabash's visitors policy was not mentioned during the parties' negotiations. Wabash hints that, at some point after the parties reached their settlement agreement, Wabash developed reason to suspect that Baer had plans to trespass on Wabash's property. The suspicion may even have been justified, because when Baer rejected the proposed provision her lawyer explained to Wabash that Baer is sometimes "required" to be on

4

Wabash property due to her work as a "life advocate" for a Wabash client. But in *Dillard*, even though the plaintiff did not learn that the defendant planned to consider him an "at will" employee until after the parties had reached an oral settlement, the court nevertheless found that the issue was not material. The court noted that the "at will" designation was not unusual, since the plaintiff had *always been* an "at will" employee. 483 F.3d at 508. Here, it appears that all visitors arriving at a Wabash location must abide by Wabash's visitors policy. Presumably, that policy will cover Baer, who like any other Wabash visitor will risk being removed if she violates the visitors policy. Certainly nothing in the May 20 agreement suggests otherwise. Wabash's late-developed theory that Baer may try to trespass on its property does not somehow make a provision requiring Baer to agree to abide by Wabash's visitors policy material to the settlement agreement the parties had already reached.

Wabash argues that it is wrong to characterize Wabash as having not raised the issue of Baer's compliance with Wabash's visitors policy until after the parties had agreed to settle. Wabash says that *Baer* never raised the issue of having *special access* to Wabash's property until after the parties had agreed to settle. But Baer never demanded a provision in the written settlement agreement giving her special access to Wabash property; rather, Wabash demanded a provision limiting Baer's access. And if Wabash wanted such a provision, it should have made it known during negotiations. *Steadfast*, 2004 U.S. Dist. LEXIS 7294 at *13 ("If Steadfast wanted a confidentiality clause, it should have made it known during negotiations."). As Baer notes, if Baer does violate Wabash's visitors policy, Wabash is free to pursue any civil or criminal remedy that may be available. Baer simply does not wish to agree to a non-material contractual term that was never raised during settlement negotiations, and the Court agrees that Wabash cannot now force Baer to

5

do so.

The Court could, for the reasons above, grant Baer's motion to enforce the parties' settlement agreement. *MH Equity*, 938 N.E.2d at 757. But the Court hesitates to order parties to take action where such an order may not be necessary. Now that the Court has found that the issue raised by the May 23 draft agreement is not material, the parties may be willing to execute the May 20 draft without being ordered to do so by the Court. Further, the parties may wish to further tweak the May 20 draft. After all, Wabash's lawyer asked for "suggestions for any changes" when he sent the May 20 draft to Baer's lawyer. Accordingly, the Court will deny the motion to enforce with leave to re-file should the parties be unable to finalize the settlement agreement on their own.

**B.     The motion to seal the settlement agreement**

Baer also asks the Court to seal the May 20 version of the settlement agreement, which she has attached as an exhibit in support of her motion to enforce. Wabash does not object.

The Seventh Circuit disfavors secrecy in judicial proceedings, as secrecy "makes it difficult for the public (including the bar) to understand why a case was brought (and fought) and what exactly was at stake in it and was the outcome proper." *GEA Group AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 419 (7th Cir. 2014); *Jessup v. Luther*, 277 F.3d 926, 928 (7th Cir. 2002) ("the public cannot monitor judicial performance adequately if the records of judicial proceedings are secret"). Consequently, federal court proceedings are "presumptively open to public scrutiny" and must "be conducted in public to the maximum extent consistent with respecting trade secrets, the identities of undercover agents, and other facts that should be held in confidence." *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006).

A court may, though, permit the sealing of documents if there is good cause to do so—that

is, if the movant's privacy interests trump the interests of the public in full transparency of the judiciary. *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999); *Jessup*, 277 F.3d at 928 ("When there is a compelling interest in secrecy, as in the case of trade secrets, the identity of informers, and the privacy of children, portions and in extreme cases the entirety of a trial record can be sealed.").

Here, the question is whether to allow the parties' May 20 draft settlement agreement to remain under seal. A party requesting that a document be sealed must justify its claim of secrecy, *Baxter Int'l v. Abbott Labs.*, 297 F.3d 544, 546-47 (7th Cir. 2002), and Baer has presented no reason that the document should be sealed, aside from the fact that the document "contains a confidentiality provision." Ordinarily, of course, a settlement agreement is a private document, not a court record, so usually a court presiding over a case that settles has no occasion to decide whether to "seal" such a document. Indeed, a party settling a legal dispute rather than taking the case to trial may be motivated at least in part by a desire for the terms of the case's resolution not to be public. *Jessup*, 277 F.3d at 928. But when the parties seek a "judge's participation in the making of [a] settlement . . . the facts and consequences of [the judge's] participation are public acts." *Id.* at 929 ("The public has an interest in knowing what terms of settlement a federal judge would approve and perhaps therefore nudge the parties to agree to."). Further, the draft's "confidentiality provision" itself acknowledges that a "judicial . . . order" may require the agreement to be disclosed.

Consequently, the settlement agreement attached as Exhibit D to the motion to enforce is presumptively a public document, and having reviewed the draft agreement the Court sees no privacy interest that outweighs the public's interest in judicial transparency. Accordingly, the Court will deny the motion to seal.

**III.     Conclusion**

In the exercise of judicial caution, the Court **DENIES** Plaintiff's Motion to Enforce Settlement Agreement [DE 25] **with leave to re-file** a renewed motion should the parties be unable to finalize their written settlement agreement in the wake of this Opinion.

The Court also **DENIES** Plaintiff's Second Motion to Seal Settlement Agreement [DE 28] and **DIRECTS** the Clerk of the Court: (1) to unseal the draft settlement agreement, which is currently docketed at DE 29; and (2) to designate DE 29 as Exhibit D to Plaintiff's Motion to Enforce Settlement Agreement [DE 25].

Wabash has by "cross-motion" asked the Court to direct the parties to execute the May 23 draft agreement. Wabash provides no authority or argument in support of its "cross-motion," and regardless the motion violates N.D. Ind. Local Rule 7-1(a), so the Court declines to address the request.

SO ORDERED this 18th day of October, 2016.

                                            s/ John E. Martin
                                            MAGISTRATE JUDGE JOHN E. MARTIN
                                            UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record